# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BOINGOC "MARY" DINH, D.O.,<br>13402 Harpers Bridge Drive<br>Houston, TX 77041,<br><br>          Plaintiff,<br><br>          -v.-<br><br>THE GOOD SAMARITAN HOSPITAL OF LEBANON, PENNSYVLVANIA, d/b/a WELLSPAN GOOD SAMARITAN HOSPITAL,<br>4th and Walnut Streets<br>Lebanon, PA 17042,<br><br>          -and-<br><br>WELLSPAN HEALTH<br>1001 South George Street<br>York, PA 17405<br><br>          Defendants. | CIVIL ACTION<br><br>NO. 2:21-CV-5129<br><br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff Boingoc "Mary" Dinh, D.O., by and through undersigned counsel, hereby brings this action against defendants The Good Samaritan Hospital of Lebanon, Pennsylvania d/b/a WellSpan Good Samaritan Hospital and WellSpan Health, and avers as follows:

## PARTIES

1. Plaintiff Boingoc "Mary" Dinh, D.O. ("Dinh"), is an adult individual residing at 13402 Harpers Bridge Drive, Houston, TX 77041.

2. Defendant The Good Samaritan Hospital of Lebanon, Pennsylvania d/b/a WellSpan Good Samaritan Hospital ("Hospital") is a Pennsylvania non-profit corporation with its registered address at 4th and Walnut Streets, Lebanon, PA 17042.

3. Defendant WellSpan Health ("Health System") is a Pennsylvania non-profit corporation with its registered office located at 1001 S. George Street, York, PA 17405.

4. At all times relevant hereto, defendant Health System has owned and operated defendant Hospital.

5. On April 13, 2021, Dinh dual filed a Charge of Discrimination against Defendants with the U.S. Equal Employment Opportunity Agency and the Pennsylvania Human Relations Commission.

6. On October 10, 2021, Dinh received her Notice of Right to Sue Letter.

## JURISDICTION AND VENUE

7. Jurisdiction exists in this matter pursuant to 28 U.S.C. §§1331 (Federal Question Jurisdiction) and 1367 (Supplemental Jurisdiction).

8. Venue lies within this Judicial District pursuant to 42 U.S.C. §2000e-5(f)(3), the alleged unlawful employment practices having been committed in the Commonwealth of Pennsylvania.

## FACTUAL BACKGROUND

9. Dinh is a Buddhist, female of Vietnamese descent. Dinh graduated from the Texas College of Osteopathic Medicine in 2017.

10. In or about July 2018, Dinh commenced a 3-year family medicine residency program at Hospital. As a resident of the Hospital's program, Dinh became an employee of Health System.

11. The residency program Director was Dr. Abdul Waheed (Muslim, male) and the Associate Director was Dr. Muhammad Nausherwan Khan (Muslim, male).

12. From the very outset of the program, Drs. Waheed and Khan subjected non-

Muslim residents, including Dinh, to harassment and treated the Muslim residents in the program preferably.

13. Former resident Travis Berger (non-Muslim) was targeted by Dr. Waheed, who required Dr. Berger to see a psychiatrist to be cleared to go back to work. Dr. Waheed also pulled Dr. Berger into a human resources meeting and harassed him during precepting.

14. Dr. Waheed was precepting with a medical student when he had a temper tantrum in which he berated Daphne Heck, LPN, a nursing supervisor, so badly that she began crying. The medical student shadowing Dr. Waheed felt unsafe and subsequently complained to the program coordinator, Sally Bachman (white Christian woman), that she felt unsafe around Dr. Waheed. The medical student left the rotation because of Dr. Waheed's abusive behavior.

15. Dr. Waheed had another emotional outburst at former chief resident Jelisa Caroll for 2019-2020 (Black, Christian woman) during a residency meeting, which was verbally abusive.

16. Sally Bachman, the program coordinator, quit due to repetitive verbal abuse by Dr. Waheed.

17. Wendy Brendle (Christian woman), the associate program coordinator, also quit because of Dr. Waheed aggressive and demeaning language toward her.

18. Dr. Waheed reprimanded Dr. Nora Callinan (non-Muslim woman) for moonlighting and taking additional work shifts at Hospital, but did not subject Dr. Muhammad Nausherwan Khan (Muslim, man) treatment when he picked up additional shifts at Hospital.

19. Dr. Waheed and Dr. Khan specifically targeted Dinh and worked together to poison the minds of other physicians about her performance as a resident.

20. Dr. Waheed falsely told Dinh's academic advisor that he contacted several

physicians who stated that they felt coerced into giving Dinh positive evaluations.

21. On multiple occasion, Dr. Waheed held meetings with Dinh without another person present, during which he unfairly berated Dinh about her academic performance. Dr. Waheed falsely criticized Dinh's knowledge and training when, in fact, Dinh had performed at or above average on her in-training service exams in comparison to her colleagues in the same class.

22. Dinh's cumulative evaluations from July 2018 – August 2020 were favorable in comparison to her colleagues in the program. In particular, in comparison with the same year colleague Fauzan Ahmed (Muslim male), Dinh far outperformed him in terms of in-training service exam scores. Dinh also passed her COMLEX 3 boards, while he failed his USMLE board and had to retake his exam. When Truongson Nguyen (Vietnamese, Buddhist) failed his boards, he was very harshly criticized by Dr. Waheed, but when Fauzan failed his STEP 3 board exam, Dr. Waheed treated it as a non-issue.

23. The residents in the program therefore were sent a clear message -- that if you are male and Muslim, you would receive favorable treatment from Dr. Waheed and Dr. Khan. In fact, Dr. Khan would routinely speak in a foreign language to Fauzan Ahmend during clinic, purposefully excluding the non-Muslim residents from their work-related conversations.

24. On June 15, 2020, Dinh had a syncopal episode at work while working the night shift. She had worked 76 hours in one week with additional hours chart reviewing.

25. Dr. Waheed instructed Dinh not to document the additional hours.

26. As a result of her medical condition, Dinh had to take a 3-week medical leave of absence.

27. When Dinh returned from her medical leave for two weeks, she learned that a

resident who was in charge of her in-basket (responding to patient request, etc.) had failed to perform those duties.

28. Dinh notified Dr. Waheed of this, but instead of addressing the other resident's failure, Dr. Waheed harassed Dinh.

29. On July 24, 2020, Dinh had another meeting with Dr. Waheed, during which he berated Dinh until she had a severe panic attack. Dinh's treating physician provided her with a note, requiring that she stay away from Dr. Waheed. Dinh was diagnosed with PTSD exacerbated by work conditions.

30. Subsequently, Dinh went on medical leave for 4 months and she filed formal complaints of harassment with Hospital's HR Department and with the Accreditation Council for Graduate Medical Education ("ACGME"). During this process, Dinh was informed that five (5) faculty members had notified Dr. Michael Bohrn, Dr. Waheed's direct supervisor, of Dr. Waheed's abuse of residents.

31. After filing the formal complaints on July 24, 2020, Dinh became the target of retaliation. Dinh was placed on remediation plan, during which she received no support or any help that was promised her.

32. On July 13, 2020, Dinh returned to work from her medical leave. She was immediately assigned an abusive and retaliatory work schedule. Dinh was assigned three (3) consecutive months of 76-80 hour work weeks. No other resident received the same work load.

33. Dinh's performance evaluations before she made the formal complaints had been fair and objective. But after she returned from medical leave, Dinh's evaluations were incredibly poor and completely unreasonable. Dr. Khan, who was a subject of Dinh's formal complaints, made every interaction with him a nightmare for Dinh, and unreasonably criticized her

performance.

34. Dinh's academic advisor, Dr. Aaron Lane (non-Muslim), confided in Dinh that, while Dinh was on leave, Dr. Khan had an anger episode in the parking lot and told Dr. Lane that he wanted Dinh to receive a zero in every ACGME performance milestone.

35. On December 28, 2020, Dinh requested Defendants to complete her licensing verification for the Oregon State Medical Board. Defendants failed to do so.

36. After being picked apart on every single interaction of patient care with Dr. Khan and after having been threatened with being placed on probation, Dinh could no longer tolerate the hostile and abusive work environment, and she felt she had no choice but to resign on January 25, 2021.

37. On February 17, 2021, for the second time, Dinh requested Defendants to complete her licensing verification to the Oregon State Medical Board. Defendants refused to do so unless Dinh signed a waiver and release of claims.

38. On March 16, 2021, Dinh was informed by an attending physician who had written her an excellent letter of recommendation, that Defendants had instructed him not to send the letter of recommendation.

## COUNT I
## Title VII – Religious Discrimination

39. Dinh incorporates herein the previous averments as if fully set forth.

40. As a non-Muslim resident in Defendants' program, Dinh was subjected to unlawful discrimination and disparate treatment on the basis of her religion.

41. Defendants' conduct as aforesaid constitutes discrimination on the basis of religion in violation of Title VII of the Civil Rights Act of 1964, as amended.

42. As a result of Defendants' conduct, Dinh has suffered and will continue to suffer

monetary damages, including lost wages and benefits.

43. As a result of Defendants' conduct, Dinh has been and will be required to expend monies for expenses, including medical treatment.

44. As a result of Defendants' conduct, Dinh has suffered emotional distress, embarrassment, humiliation and damage to her reputation and earning capacity.

45. The conduct of Defendants was extreme and outrageous, thereby justifying the imposition of punitive damages.

WHEREFORE, plaintiff Boingoc "Mary" Dinh, D.O. demands judgment in her favor and against defendants The Good Samaritan Hospital of Lebanon, Pennsylvania d/b/a WellSpan Good Samaritan Hospital and WellSpan Health, jointly and severally, for backpay, front pay, compensatory damages, punitive damages, attorneys' fees, and costs of suit.

## COUNT II
## Title VII – Gender Discrimination

46. Dinh incorporates herein the previous averments as if fully set forth.

47. As a female resident in Defendants' program, Dinh was subjected to unlawful discrimination and disparate treatment on the basis of her gender.

48. Defendants' conduct as aforesaid constitutes discrimination on the basis of sex in violation of Title VII of the Civil Rights Act of 1964, as amended.

49. As a result of Defendants' conduct, Dinh has suffered and will continue to suffer monetary damages, including lost wages and benefits.

50. As a result of Defendants' conduct, Dinh has been and will be required to expend monies for expenses, including medical treatment.

51. As a result of Defendants' conduct, Dinh has suffered emotional distress, embarrassment, humiliation and damage to her reputation and earning capacity.

52. The conduct of Defendants was extreme and outrageous, thereby justifying the imposition of punitive damages.

WHEREFORE, plaintiff Boingoc "Mary" Dinh, D.O. demands judgment in her favor and against defendants The Good Samaritan Hospital of Lebanon, Pennsylvania d/b/a WellSpan Good Samaritan Hospital and WellSpan Health, jointly and severally, for backpay, front pay, compensatory damages, punitive damages, attorneys' fees, and costs of suit.

## COUNT III
## ADA – Disability Discrimination

53. Dinh incorporates herein the previous averments as if fully set forth.

54. As a result of the harassment to which she was subjected as a resident in Defendants' program, Dinh developed from an impairment, Post-Traumatic Stress Disorder, that substantially limits one or more of her major life activities.

55. Dinh was regarded by Defendants as suffering from an impairment that substantially limits one or more of her major life activities.

56. Defendants' conduct as aforesaid constitutes a violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §12101, et seq.

57. As a result of Defendants' conduct, Dinh has suffered and will continue to suffer monetary damages, including lost wages and benefits.

58. As a result of Defendants' conduct, Dinh has been and will be required to expend monies for expenses, including medical treatment.

59. As a result of Defendants' conduct, Dinh has suffered emotional distress, embarrassment, humiliation and damage to her reputation and earning capacity.

60. The conduct of Defendants was extreme and outrageous, thereby justifying the imposition of punitive damages.

WHEREFORE, plaintiff Boingoc "Mary" Dinh, D.O. demands judgment in her favor and against defendants The Good Samaritan Hospital of Lebanon, Pennsylvania d/b/a WellSpan Good Samaritan Hospital and WellSpan Health, jointly and severally, for backpay, front pay, compensatory damages, punitive damages, attorneys' fees, and costs of suit.

## COUNT IV
## Title VII – Retaliation

61. Dinh incorporates herein the previous averments as if fully set forth.

62. Title VII prohibits retaliation in the workplace against employees who have, *inter alia*, opposed practices made unlawful under the law.

63. Dinh's formal complaints filed against Dr. Waheed and Dr. Khan constitute "protected activity" pursuant to state and federal law.

64. Defendants retaliated against Dinh on account of her protected activity by subjecting her to harassment, giving her poor performance evaluations, threatening to place her on probation, and refusing to promptly and accurately report her progress to licensing bodies.

65. As a result of Defendants' conduct, Dinh has suffered and will continue to suffer monetary damages, including lost wages and benefits.

66. As a result of Defendants' conduct, Dinh has been and will be required to expend monies for expenses, including medical treatment.

67. As a result of Defendants' conduct, Dinh has suffered emotional distress, embarrassment, humiliation and damage to her reputation and earning capacity.

68. The conduct of Defendants was extreme and outrageous, thereby justifying the imposition of punitive damages.

WHEREFORE, plaintiff Boingoc "Mary" Dinh, D.O. demands judgment in her favor and against defendants The Good Samaritan Hospital of Lebanon, Pennsylvania d/b/a WellSpan

Good Samaritan Hospital and WellSpan Health, jointly and severally, for backpay, front pay, compensatory damages, punitive damages, attorneys' fees, and costs of suit.

## COUNT V
## ADA - Retaliation

69. Dinh incorporates herein the previous averments as if fully set forth.

70. The ADA prohibits retaliation in the workplace against employees who have, *inter alia*, sought assistance for an accommodation in the workplace or to have otherwise opposed practices made unlawful under the law.

71. Dinh's request for accommodations in the workplace and formal complaints filed against Dr. Waheed and Dr. Khan constitute "protected activity" pursuant to state and federal law.

72. Defendants retaliated against Dinh on account of her protected activity by subjecting her to harassment, giving her poor performance evaluations, threatening to place her on probation, and refusing to promptly and accurately report her progress to licensing bodies.

73. As a result of Defendants' conduct, Dinh has suffered and will continue to suffer monetary damages, including lost wages and benefits.

74. As a result of Defendants' conduct, Dinh has been and will be required to expend monies for expenses, including medical treatment.

75. As a result of Defendants' conduct, Dinh has suffered emotional distress, embarrassment, humiliation and damage to her reputation and earning capacity.

76. The conduct of Defendants was extreme and outrageous, thereby justifying the imposition of punitive damages.

WHEREFORE, plaintiff Boingoc "Mary" Dinh, D.O. demands judgment in her favor and

against defendants The Good Samaritan Hospital of Lebanon, Pennsylvania d/b/a WellSpan Good Samaritan Hospital and WellSpan Health, jointly and severally, for backpay, front pay, compensatory damages, punitive damages, attorneys' fees, and costs of suit.

## COUNT VI
### PHRA -- Discrimination

77. Dinh incorporates herein the previous averments as if fully set forth.

78. Defendants' conduct as aforesaid constitutes a violation of the Pennsylvania Human Relations Act, 43 P.S. §955 et seq.

79. As a result of Defendants' conduct, Dinh has suffered and will continue to suffer monetary damages, including lost wages and benefits.

80. As a result of Defendants' conduct, Dinh has been and will be required to expend monies for expenses, including medical treatment.

81. As a result of Defendants' conduct, Dinh has suffered emotional distress, embarrassment, humiliation and damage to his reputation and earning capacity.

WHEREFORE, plaintiff Boingoc "Mary" Dinh, D.O. demands judgment in her favor and against defendants The Good Samaritan Hospital of Lebanon, Pennsylvania d/b/a WellSpan Good Samaritan Hospital and WellSpan Health, jointly and severally, for backpay, front pay, compensatory damages, attorneys' fees, and costs of suit.

## COUNT VII
### PHRA -- Retaliation

82. Dinh incorporates herein the previous averments as if fully set forth.

83. The PHRA prohibits retaliation in the workplace against employees who have, *inter alia*, sought assistance for an accommodation in the workplace or otherwise opposed practices made unlawful under the law.

84. Dinh's conduct, as aforesaid, constitutes "protected activity" pursuant to state and federal law.

85. Defendants have retaliated against Dinh, as aforesaid.

86. As a result of Defendants' conduct, Dinh has suffered harm.

WHEREFORE, plaintiff Boingoc "Mary" Dinh, D.O. demands judgment in her favor and against defendants The Good Samaritan Hospital of Lebanon, Pennsylvania d/b/a WellSpan Good Samaritan Hospital and WellSpan Health, jointly and severally, for backpay, front pay, compensatory damages, attorneys' fees, and costs of suit.

Date: November 22, 2021                  */s/ Stanley B. Cheiken*
                                         STANLEY B. CHEIKEN, ESQUIRE

                                         2617 Huntingdon Pike
                                         Huntingdon Valley, PA 19006
                                         (215) 572-8600
                                         *Counsel for Plaintiff*